## George Shafer, and Elmira his Wife, vs. Daniel G. Mumma.

The *Mayor* of Hagerstown has, under the charter and ordinances of that city, authority to try and fine disorderly persons and *lewd woman*, found within its corporate limits, and the exercise of such authority is but the exertion of the *police* power, as contradistinguished from the regular *judiciary* powers, and is, therefore, no infraction of that part of the Constitution of the State which appertains to the administration of the judicial power, strictly as such.

Appeal from the Circuit Court for Washington county.

*Action* of *trespass* and false *imprisonment*, brought on the 3rd of November 1858, by the appellant, Elmira, whilst a *feme sole*, against the appellee. The defendant pleaded that he did not commit the wrongs alleged, and then several pleas of justification under and by virtue of authority conferred upon him as Mayor of Hagerstown, in which he sets forth in full the several Acts of Assembly and ordinances under which he acted as Mayor, as aforesaid, all of which are sufficiently stated in the opinion of this court. The plaintiffs joined issue upon the first plea, and replied to the others, on which replication issue was joined by the defendant.

*Exception:*—A statement of facts was agreed upon between the parties, which is sufficiently stated in the opinion of this court. After all the testimony had been given, the plaintiffs submitted a series of prayers, asking the court to instruct the jury that the defendant's several pleas of justification were not sufficient in law, and afforded him no protection; that the defendant had no judicial authority to take cognizance of pretended offences against said corporation, and that being a lewd woman, without having committed some overt act, is not punishable. These prayers, the court (Perry, J.) refused to grant, and to this ruling the plaintiffs excepted, and the verdict and judgment being against them appealed.

The cause was argued before Le Grand, C. J., Tuck, Bartol and Goldsborough, J.

Shafer & Wife *vs.* Mumma.

*D. H. Wiles* and *R. H. Alvey,* for the appellants:

The principal question presented in this case is, had the appellee authority, by virtue of his office as Mayor of Hagerstown, to act in a judicial capacity, impose fines and punishments for any supposed violation of law? We contend that the Constitution of the State conferred no such power upon him, nor was he elected to his office *at the time and by the people of any district,* pursuant to any Act of Assembly passed for the purpose of carrying into effect that portion of the Constitution, which provides for the election and qualification of *all* the judicial officers known to that instrument. Art. 4, sec. 1, of the Constitution says: "The judicial power of this State *shall be vested* in a Court of Appeals, in circuit courts, in such courts for the city of Baltimore as may be hereafter prescribed, and in justices of the peace." Sec. 19 of the same Article says: "The Legislature, at its first session after the adoption of the Constitution, shall fix the number of justices of the peace and constables for each ward in the city of Baltimore, and for each *election district* in the several counties, who shall be elected by the legal and qualified voters *thereof, respectively, at the next general election for delegates thereafter.*" Art. 3, sec. 5, says: "The first election for delegates shall take place on the first Wednesday of November, eighteen hundred and fifty one, and the election, &c., shall be held every two years thereafter." And Art. 4, sec. 29, provides for the officers elect to be commissioned by the governor. Municipal corporations are public, being part of the State government; their charters are at all times subject to modification by a convention to adopt a new Constitution or the Legislature, (15 *Md. Rep.*, 376, *Baltimore Police cases,)* and, therefore, if the Act of 1847, ch. 198, set out by the appellee in his pleas, ever had any virtue it was repealed by the adoption of the present Constitution. By that instrument the judicial power of the State is conferred upon certain and specified officers, and the Legislature cannot empower others not named in the Constitution, to act in a judicial capacity and impose fines and punishments. The delegation of judicial power under the Constitution is *exclusive* in its

Shafer & Wife *vs.* Mumma.

nature. The Legislature has no power to exercise or authorise the exercise of judicial power; it cannot grant judicial powers. 1 *G. & J.,* 472, *Crane vs. Meginnis.* 8 *Gill,* 145, *Fiery vs. Miller.* 1 *Wheat.,* 304, *Martin vs. Hunter's lessee.* 17 *Johns.,* 4, *United States vs. Lathrop.* 1 *J. J. Marshall,* 205, *Frame vs. Trebble.* 7 *Munroe,* 649, *Jarman vs. Patterson.* 14 *Illinois,* 420, *Rockford vs. Maynard.*

*A. K. Syester,* for the appellee:

The ordinances and by-laws of a municipal corporation are mere *police* regulations, for the order, peace and morals of a particular community, and form no part of the criminal jurisprudence of the State. The exercise of the *"judicial power"* of the State is invoked in criminal cases, arising under the general criminal justice of the State, and where "its peace, government and dignity" is involved, and is not challenged by the infractions of mere police regulations of municipal corporations, nor does any tribunal exercising the "judicial power of the State," hold itself either bound to take notice of such violations, as such, or called on to suspend, or arrest its own action, when invoked, by a violation of the general criminal justice of the State, because such violation carried with it the infraction of a by-law of a municipal corporation, which, as such, has already been made the subject of fine or other punishment, under such by-law. The mayor in this case did not presume to take cognizance of any offence against the general criminal justice of the State, or any thing touching its peace, government and dignity, as such; but acting ministerially in enforcing the by-laws or police regulations of his corporation, he trenched upon no office committed to the "judicial power" of the State, assumed none of its obligations, and cannot, therefore, be regarded as having acted in a "judicial capacity," unless the *form,* and not the *substance* of things, shall be regarded as establishing their character. The principle sought to be enforced by the appellants, as drawn from sec. 1, Art. 4, of the Constitution, not only prostrates a large mass of police regulations of the State, involving in their enforcement the

exercise of functions *quasi* judicial, and exclusively commit-ted to officers and persons other than those enumerated in that section of the Constitution, but its application in the form contended for, attacks and overthrows the "legislative power" of municipal corporations, because the same Constitution would seem, by an irresistible interpretation, to confine the "legislative power" of the State to the Senate and House of Delegates. It is insisted, therefore, that the Legislature had, and still have, the power to authorise the municipal corporation of Hagerstown to pass such by-laws and ordinances as those involved in this case, and to impose fines for their violation, and to say how these fines shall be enforced. And this position is fully sustained by the authorities. *Wilcock on Corp.*, 95, in 14 *Law Lib.*, 53. 15 *Md. Rep.*, 376, *Balt. Police cases.* 14 *Ala.*, 400, *Mayor & Alderman of Mobile vs. Allaire.* 1 *Wend.*, 261, *Rogers vs. Jones.*

*D. Weisel*, also argued for the appellee, but chiefly on other points, the arguments upon which on both sides is omitted, inasmuch as the decision of this court renders a notice of such arguments unnecessary.

Le Grand, C. J., delivered the opinion of this court.

This is an action of trespass and false imprisonment, instituted by the wife of George Shafer, whilst a *feme sole*, against the appellee.

To the declaration the defendant pleaded specially, in substance alleging, that at the time of the alleged trespass, he was mayor of Hagerstown, duly elected and qualified, and that the appellant, Elmira, was brought before him and proceeded against under an ordinance of the mayor and council of Hagerstown, passed the 26th day of June 1858, the first section of which provides that the mayor, on information, shall "cause to be brought before him all vagrant, loose and disorderly persons, lewd women, keepers of bawdy houses, and persons having no visible means of livelihood, who may be found within the corporate limits of the town, and if found guilty, to fine such person not exceeding $20."

The pleas set out in full the Acts of Assembly and ordinances under which the defendant, as mayor of Hagerstown, justifies the trespass and imprisonment complained of.

By the 4th section of the Act of 1823, ch. 155, entitled, an Act "to alter and change the name of Elizabethtown, in Washington county, to Hagerstown, and to incorporate the same," the moderator and commissioners of Hagerstown are authorized and empowered to provide by ordinance "for taking up, fining, or committing to the work-house in Hagerstown, all vagrant, loose and disorderly persons, lewd women, keepers of bawdy houses," &c.; and by the 1st section of the Act of 1847, ch. 198, it is provided, that the mayor and council of Hagerstown shall have "all the powers and immunities heretofore granted to the moderator and commissioners of said town."

A statement of facts was agreed upon between the parties. From this it appears that the plaintiffs admit, that at the time of the alleged trespass, the defendant was acting as mayor of Hagerstown, having been duly elected and qualified; that the appellant, Elmira, was brought before him, charged with being a lewd woman, found within the limits of Hagerstown, and that, after hearing of witnesses, she was adjudged by him to be such, and fined accordingly. It is also admitted, on the part of the plaintiffs, "that the said Elmira was a *lewd woman* and *public prostitute*, but well behaved on the streets of said town, and never known to disturb any person upon said streets, or at any other place."

It thus appears that, under the statute law, the municipal authorities of Hagerstown had the right to pass the ordinance under which Elmira was arrested, &c., and also that it is an undisputed fact in the case, that at the time of the grievances complained of, she was "a lewd woman and public prostitute." These concessions would seem sufficient to answer conclusively the claim of the plaintiffs, and to constitute a full and legal justification for the conduct of the defendant in the premises. But it is said, on behalf of the plaintiffs, that since the adoption of the present State Constitution, the mayor

of Hagerstown could not try and fine under the ordinance, because the exercise of such power is but the exertion of the *judicial* power, which, by the Constitution, is confided to certain specified classes of persons, and that the mayor of Hagerstown is not included in the enumeration.

This argument would be entitled to great weight, if we thought the power exercised by the defendant was, in the sense of the Constitution, a part of the judicial power. But we entertain no such opinion. We regard it as but a part of the *police* power, as contradistinguished from the regular judiciary powers of the State. From time immemorial, a distinction has been observed between the two, both in England and this country. It would be next to, if not quite impossible, for a large city like Baltimore to preserve order within its limits, preserve the streets free from interruption, indeed to do most of the thousand things necessary to be done, to carry on its various and indispensable operations, if in every case it were a necessary preliminary that the offender should be regularly prosecuted by presentment, indictment, and trial. It has always been understood that, under the police power, persons disturbing the public peace, persons guilty of a nuisance, or obstructing the public highways, and the like offences, may be summarily arrested and fined, without any infraction of that part of the Constitution which apportions the administration of the judicial power, strictly as such. We regard the power conferred on the corporation of Hagerstown, to summarily punish persons of the description the appellant, Elmira, is admitted to have been, as falling directly within the definition of a police regulation. She was punished for an offence against the decency and morals of Hagerstown, and not against those of the State; she offended within the "corporate limits," and for such offence she was made to answer. This did not wipe out all responsibility for the offence to the dignity and sovereignty of the State.

Considering the case stated to be one which shows, that under no circumstances there can be any recovery in this action, it is unnecessary to examine the prayers, for it is evident

that if the facts admitted amount to a justification on the part of the defendant, that any prayer which contradicts that proposition, must be erroneous.

*Judgment affirmed.*