No. 6888.

THE STATE EX REL. HERBERT GEALE VS. THE RECORDER OF THE FIRST
RECORDER'S COURT OF NEW ORLEANS.

The writ of *certiorari*, issued by a superior to inferior court, lies not only in causes of which the superior court has appellate jurisdiction, but likewise in causes in which there is no appeal, and where the inferior court is of the last resort.

The only court authorized to issue a writ of *certiorari* to an inferior court, is the one to which all appeals from the inferior court are made returnable.

This court has not appellate jurisdiction of criminal cases before the Recorders' Courts of New Orleans, when the penalty imposed is not death, nor imprisonment at hard labor, nor a fine exceeding three hundred dollars, nor where a fine or penalty imposed by municipal corporation is not involved; and hence is without authority, in such cases, to issue writs of *certiorari* to the Recorders' Courts.

A fine or penalty imposed by a State law, to be exacted by the magistrates of a municipal corporation for the use of the corporation, is not a fine or penalty imposed by the corporation.

The exercise of judicial power by the Recorders of New Orleans, when not extended further than the cognizance of cases arising under the regulations for the police of the city, is constitutional. Such cases need not be tried by jury.

APPLICATION for a writ of *certiorari*.

*R. Hutchenson* and *Chas. S. Rice* for relator.

*Jno. A. Campbell* for respondent.

The opinion of the court was delivered by

MANNING, C. J. Herbert Geale was arrested upon a warrant, issued by one of the Recorders of New Orleans, for selling or otherwise disposing of a policy, combination, or device in a lottery to be drawn in this city, without license or permission of the Company now authorized by law, and in violation of an act of the General Assembly. He applied to this court for a writ of certiorari, commanding the Recorder to send up a certified copy of the proceedings in the cause then pending before him, to the end that their legality may be inquired into and determined, and also for an order injoining him from proceding further therein until this Court had acted upon the same. Provisional orders were made

·accordingly, and the Recorder having answered, we have now to determine whether the relator is entitled to the relief he has sought.

The law which Geale is charged with violating is an act relative to the unlicensed sale of lottery tickets in New Orleans, and conferring on the police courts the power to suppress such sale. Acts 1874, p. 47. The petition alleges that, according to the provisions of this act, no appeal lies from a final judgment of the Recorder to this Court, or to any District court, and hence the judgment of the Recorder will be a decision of the court of the last· resort, if he shall try and convict the relator upon ·this charge. It is then alleged that the Recorder is an inferior judge, over whom this court has immediate appellate jurisdiction—that he ·ought not to be permitted to take jurisdiction of the cause, or to proceed to the trial of relator, for the reason that he would be exercising judicial power which the legislature was not competent to confer upon him—that the Act, with the violation of which he is charged, is unconstitutional in so far as it attempts to confer this jurisdiction upon the police court, ·because it contravenes arts. 73 and 94 of the Constitution, and because it denies the right of trial by jury for an offense against the State, and is partial and unequal in its operation.

The answer of the Recorder is:—" The respondent comes in obedience to the mandate of the court and for answer to the rule says,

" 1st. That the cause before him as Recorder, described in the order and mandate of the Court, under the constitution and laws of the State is not examinable in this Court in manner and form as proposed in the petition and rule, and that this Court ought not to take cognisance of the same.

" 2d. That this respondent had jurisdiction of the said cause under the constitution and laws of this State, and. was proceeding regularly and lawfully in the determination of the same as he might, and that this honorable court ought not to entertain any motion or proceeding to arrest him, and because that he was proceeding lawfully and regularly in a matter submitted to him by the Constitution and laws, and ought to continue to exercise the jurisdiction conferred by them, and because this honorable court is not charged with authority to suspend his proceedings, he prays judgment and that he may be discharged from further answer, and be allowed to proceed as he was proceeding."

An inquiry into the nature and purpose of the writ of *certiorari* is necessary to the proper presentation and understanding of the question submitted to our decision. ·

The writ has its origin in the Common Law.  Blackstone assigns to it four purposes, 1. to consider and determine the validity of appeals or indictments, and the proceedings thereon, and to quash or confirm them as there is cause, 2. where it is surmised that a partial or insufficient

trial will probably be had in the court below, the indictment is removed in order to have the defendant tried in the Queen's Bench, or before the justices of *nisi prius*. The other two purposes need not be noticed. The writ, when issued to the inferior court for removing any record or other proceeding, as well upon indictment as otherwise, supersedes the jurisdiction of such inferior court. Comm. book IV. p. 321. Afterwards, another purpose was assigned to it, viz to complete the records of a civil cause, and it is to effect this purpose that it is commonly invoked here, but it is also used in the common law States to remove either a civil or criminal cause from an inferior to a superior court for the purpose of inquiring into the validity of the proceeding in the lower court. In England, certiorari would lie from the Court of Queen's Bench to justices, even in cases which they were empowered finally to hear and determine. 2 Haw. P. C. 286.

That these features of the writ were intended to be preserved here, at least in part, is manifest from the peculiar provision of art. 857 of our Code of Practice;—this mandate is only granted in cases where the suit is to be decided in the last resort, and where there lies no appeal, by means of which, proceedings absolutely void might be set aside. And that it was intended to be applied to both criminal and civil causes is apparent from the instances, given by way of illustration, where the writ may be used—when the inferior judge has refused to hear the party or his witnesses—when he has pronounced sentence without having cited them to appear.

It will be observed then, that this article of the Code of Practice, so far from restricting the operation of the writ to causes of which the superior court has appellate jurisdiction, was framed expressly for those causes wherein there was no appeal, and where the inferior court was of the last resort. Then as to the source from which the writ must emanate, art. 860 provides that it can only be directed to an inferior judge by the court having immediate appellate jurisdiction over him, and by no other—not that the court issuing the writ shall be vested with jurisdiction of the cause, for the removal of which the writ is sought, but it must be the court to which appeals lie direct from the judge in such causes as are appealable.

The peculiarities of these two articles have been to all appearance very little noticed in our jurisprudence. The petition in this cause, so far from asking for the writ to bring before us a cause that is appealable, makes the fact that the cause is unappealable the foundation of the relator's right to the writ. It is because the judgment of the Recorder, when pronounced, will be a decision in the last resort, that he prays the issuance of a writ which will enable us to set aside proceedings that he claims are absolutely void.

Now if we derived our jurisdiction from the Code of Practice, we should unquestionably have the power to have the proceedings of the Recorder brought before us for examination of their validity. That Code contemplates and provides for such examination in unappealable cases. arts. 855–866. We have therefore to inquire whether we are forbidden or permitted by the organic law to take jurisdiction of this cause.

The Constitution commands that we shall have appellate jurisdiction only, except in cases which it alone shall designate, and it has designated but one, i. e. the power to issue writs of *habeas corpus*, in cases where we may have appellate jurisdiction. The cases to which this jurisdiction shall extend are enumerated and classified, and among them are those in which the constitutionality or legality of any fine, forfeiture or penalty imposed by a municipal corporation shall be in contestation, whatever may be the amount thereof. In criminal cases the jurisdiction is of questions of law only, whenever the punishment of death, or imprisonment at hard labor, or a fine exceeding three hundred dollars is actually imposed. In civil cases, the matter in dispute must exceed five hundred dollars. art. 74.

All the previous constitutions of this State had similar provisions except that of 1812, which simply conferred appellate jurisdiction and applied it to all civil causes involving a specified sum. art. IV. sec. 2. The constitutions of 1845 (art. 63) and of 1852 (art. 62) are like that of 1868 in this respect, except that the latter provides that an appeal will lie to this court direct from a judgment for a fine, forfeiture, or penalty imposed by a municipal corporation, whatever may be the amount thereof. The adjudications of this court upon these corresponding articles in the earlier constitutions are therefore authority in the interpretation of the one now in force.

The objection of invalidity, because the relator is deprived of the right of trial by jury by the Act in question, may be disposed of with the remark that the contrary has been long held to be a sound construction. State v. Gutierrez, 15 Annual, 190. So also, the argument on the part of the respondent's counsel, that the issuing of the writs applied for by relator is not allowable, because of the uniform decisions of this court, that writs of mandamus, prohibition, etc. will only be issued in aid of its appellate jurisdiction, does not apply here. Art. 857 contemplates, and in terms provided for, a writ of certiorari, specially adapted to such cases as are not appealable.

Considered as a civil cause alone, our jurisdiction does not attach to the proceedings of the Recorder, because the matter in dispute is only twenty-five dollars. Considered as a criminal cause, we have not jurisdiction because the penalty imposed is not death, nor imprisonment at

454 SUPREME COURT OF LOUISIANA,

State ex rel. Geale vs. Recorder of the First Recorder's Court.

hard labor, nor a fine exceeding three hundred dollars. There remains. for inquiry whether the case falls within the definition of a fine, or penalty imposed by a municipal corporation.

Two acts were passed by the General Assembly on the same day relative to the sale of lottery tickets. The first enacts that any person who shall within the city of New Orleans sell a lottery ticket without license of the company now authorized by law, shall be liable to pay a fine of twenty-five dollars to the City, one half of which shall be for the benefit of the informer, and imposes upon any police officer the duty of arresting such person, and of taking him before the police court of the district, wherein the violation may have occurred, which court shall condemn the offender to pay the fine, or in default of payment, to imprisonment for five days. Acts 1874, p. 47.

The second makes the same act of any person, done any where in the State, a misdemeanor, punishable by imprisonment of not less than ten days nor more than a month, and a fine of not less than fifty nor more than two hundred dollars, one half of which is for the informer and the other for the parish wherein the offense was committed. *Idem,*. p. 48.

The thought in the mind of the legislator evidently was that the act denounced and punished by the first law was not an offence against the State, for if it had been, its operation would have been made to extend through the whole State, and the second act would have been. superfluous. The relator in his petition denominates it a State offense. But if he has correctly denominated it, then it is not an act for which a fine or penalty has been or can be imposed by a municipal corporation, and our jurisdiction would fail on that ground. Fines, forfeitures, and penalties are imposed by municipal corporations for violations of their ordinances. But the power of the State to impose fines and penalties for the same act that is punishable by a municipal ordinance is well established. The fact that the State has conferred upon a corporation the power to pass ordinances and impose penalties for the regulation of any specified subject does not necessarily supersede the State law on this same subject, but the State law and the City ordinance may both stand, if not inconsistent. Thus in New York, the legislature imposed a penalty of one dollar for servile labor on Sunday, and the corporation of the City of New York imposed a penalty of five dollars for the same offence. Both were held good. Cooley says, the same act may constitute an offence against both the State and the municipal corporation, and may be punished under both without violation of any constitutional principle. Const.. Lim. 199. So also Dillon;—The State may, and as to local matters often does except municipal corporations from the operation of its laws, and either provides a special law for them, or authorizes them to make spe-

cial regulations for themselves. &ast; &ast; Hence the same act is sometimes forbidden by general statute, and by the ordinance of a municipal corporation, each providing a separate and different punishment. Munic. Corp. § 301.

The fine impending over the relator is not imposed by an ordinance of the City, and hence we have not here the case of an act twice forbidden by distinct and several authorities, viz the State law and the municipal ordinance. But in principle it is the same. A corporation has no power to pass any ordinances whatever except in so far as that power is actually delegated to it by the State, or is imparted to it by implication, as flowing necessarily from the grant of a general power to regulate its administration. The State need not grant a corporation the power to make any ordinance whatever, but may reserve to itself the entire and exclusive control of the administration of each city or town within its limits, but convenience and necessity have always prompted the delegation of those powers to the corporation. As the corporation derives the power to pass ordinances from the State, it follows that the State can enact a law for the corporation, and accordingly the State in 1874 did pass on the same day the two laws already mentioned. The fine or penalty provided by these acts is in neither case imposed by a municipal corporation. The first makes a police regulation for the government of a particular city, and confides its enforcement to the police magistrates of the city. The second makes the same act an offence against the State, punishable by the State courts, and it is only when the fine or penalty is imposed by a municipal corporation that we have jurisdiction. New Orleans v. Blanc, 1 Annual, 385. Travers' case, 3 Annual 693.

And this brings us to the consideration of the last objection of the relator, i. e. that the legislature could not constitutionally confer judicial power upon the Recorder.

The judicial power of this State is vested in a Supreme court, in district courts, in parish courts, and in justices of the peace, (Const. art. 73) and no judicial power, except as committing magistrates in criminal cases, shall be conferred on any officers other than those mentioned above, except such as may be necessary in towns and cities, and the judicial powers of such officers shall not extend farther than the cognisance of cases arising under the police regulations of towns and cities in the State. art. 94.

We are met on the threshold here by the well settled jurisprudence of this State, that no appeal will lie to this Court from a judgment for less than the sum mentioned in the constitution, rendered by a mayor or police magistrate of a town for an alleged infraction of an ordinance of the corporation, where the only question raised is the constitutionality of an act of the legislature vesting judicial power in the officer

who rendered the judgment. Donaldsonville v. Richard, 4 Annual 83. Municipality v. Corning, *idem* 407. Albert v. Brewer, 9 Annual 64. State v. Rebassa, *idem* 305. Penn v. Municipality, 4 Annual 13.

The case of Lafon v. Dufrocq, 9 Annual 350 is cited as authority for the want of power of the legislature to confer judicial power upon the police magistrate of a town, but that decision was based on the constitutions of 1845 and 1852, which did not contain any provision similar to art. 94 of the present Constitution, which, as we have seen, makes special mention of the 'judicial powers' that are permitted to be conferred upon such officers as may be 'necessary in towns and cities.' We therefore hold that the exercise of judicial power by the recorders of New Orleans, when not extended further than the cognisance of cases arising under the regulations for the police of the city, is not unconstitutional.

Even without this delegation of a partial and limited judicial power to a police magistrate, it has been elsewhere held that the power could be exercised because it was not in the strict sense judicial. Thus where the power of the mayor of Hagerstown to try and fine under an ordinance imposing a fine for an offense was disputed, and the same offense was punishable by the State as a misdemeanor, and the constitution of Maryland was like our own in respect to the courts wherein judicial power was vested, it was said;—the argument that the mayor could not try and fine under the ordinance, because the exercise of such power is judicial, which by the Constitution is confided to certain classes of persons, would be entitled to great weight, if we thought the power exercised by the defendant was, in the sense of the Constitution, a part of the judicial power. But we entertain no such opinion. We regard it as but a part of the police power, as contradistinguished from the regular judiciary powers of the State. From time immemorial, a distinction has been observed between the two, both in England and this country. * * * We regard the power, conferred on the corporation of Hagerstown, to summarily punish persons of the description of appellant, as falling directly within the definition of a police regulation. She was punished for an offense against the decency and morals of the town, and not against those of the State. This did not wipe out all responsibility for the offense to the dignity and sovereignty of the State. Shafer v. Mumma, 17 Md. 331. See also Floyd v. Eatonton, 14 Ga. 354 on this point, and also on that of non-trial by a jury.

We have therefore arrived at the conclusion that we can not grant the relator the relief by a writ of certiorari to bring up the proceedings of the Recorder, to the end that inquiry of their validity be made, because of our want of constitutional power to exercise the jurisdiction. We readily concede, and have endeavored to demonstrate, that the Code of Practice intends that the writ shall issue in an unappealable case,

wherein the judgment is of the court of the last resort, but that Code is not the source of this court's jurisdiction, and its provisions relative to the issuing of that writ under the circumstances of this case are inapplicable to this court, because the Constitution has in express terms limited its original jurisdiction to the issuance of the *habeas corpus*, and in all other causes has conferred appellate jurisdiction alone. Shalor's case, 9 Annual, 522. Taenzer's case, 15 Annual, 120.

We are urged to interpose to prevent the infliction of a grave and flagrant public injury. But it would be a graver injury if this court should overstep the bounds set up by the organic law, within which it must move, for the purpose of correcting any evil, however flagrant.

It is adjudged and decreed that the writ of certiorari is refused, and the restraining order, heretofore issued to the Recorder, is cancelled and annulled at the costs of the relator.