### WELLSVILLE (CITY) v. PATRICK O'CONNOR.

1. ORDINANCE PUNISHING ASSAULT AND BATTERY, VOID.

A municipal corporation has no power, under Sec. 1692 Rev. Stat., which grants to municipal corporations the general power "to preserve peace and good order," nor under Sec. 2108 Rev. Stat., which defines the power of the ·council as to the public peace, to provide by ordinance for the punishment of the offense of assault and battery, and such an ordinance is void.

2. POWER OF MUNICIPALITY AS TO PUBLIC PEACE CONFERRED BY SEC. 2108 REV. STAT.

The general power "to preserve the peace and good order," conferred upon municipal corporations by Sec. 1692 Rev. Stat., is limited, and the manner of its exercise definitely prescribed by Sec. 2108 Rev. Stat., and the authority of municipalities to pass ordinances concerning the public peace must be found, if at all, in the later section.

3. ORDINANCE NOT INVALID UNDER SEC. 1694 REV. STAT.

An· ordinance whose several sections all relate to one subject, the punishment of offenses against the city, and which contains nothing upon any other subject and nothing not clearly expressed in its title, is not invalid as in violation of Sec. 1694 Rev. Stat., which provides that "No by-law or ordinance shall contain more than one subject, which shall be clearly expressed in its title."

ERROR to the court of common pleas.

F. L. Wells, for plaintiff.

W. F. Lones and Charles Boyd, for defendants.

BURROWS, J. ·

Two causes are here decided—Wellsville v. O'Connor and Wellsville v. Harry Kirkbride.

O'Connor was convicted before the mayor of the city of Wellsville upon the charge of having committed the crime of assault and battery in violation of an ordinance of the city; was adjudged to pay a fine of fifty dollars and costs, and to stand committed to the workhouse till fine and costs were paid. This judgment was reversed by the court of common pleas on the· ground that the ordinance was invalid, and we are now called upon to review this judgment of the court of common pleas.

The ordinance is said to be invalid because the city was not authorized to create such offense, and because the ordinance does not conform to the requirements of Sec. 1694 Rev. Stat., which provides that "No. by-law or ordinance shall contain more than one subject, which shall be clearly expressed in its title."

As to this second ground of complaint we are unanimous in the opinion that it is not well founded. The ordinance in question contains fifteen sections, defining fifteen separate offenses against the city. They

all relate to one subject—the punishment of offenses against the city; and there is nothing in the ordinance upon any other subject, and nothing which is not clearly expressed in its title: "An ordinance to prohibit and punish certain offenses therein named, and for the more effectual preservation of peace and good order in the city of Wellsville, Ohio."

We do not think that any discussion of this question is required, as it has been settled, in principle at least, by the Supreme Court. State v. Covington, 29 Ohio St. 102.

As to the other ground of objection to the ordinance—that it is not authorized by statute—we are not agreed; but in the opinion of the majority of the court this objection is well taken.

The only disagreement between members of the court is upon the proper construction to be placed upon certain provisions of the statute. There is no dispute as to the essential facts of the case. It is an undisputed fact that the city of Wellsville undertook by ordinance to prohibit and punish the crime of assault and battery, defining it in the precise language adopted by the legislature in defining the offense; and that the authority of the city to enact the ordinance is given, if at all, by Sec. 1692 Rev. Stat., Par. 1, and Sec. 2108 Rev. Stat.

Neither is there any disagreement as to the general rules of law applicable to the case. It is agreed that the legislature can authorize a municipal corporation to prohibit and punish minor offenses, which are also punished by the state, whatever may be the law elsewhere. Koch v. State, 53 Ohio St. 433 [41 N. E. Rep 689].

The majority of the court think the following propositions are well settled by approved text writers and courts: That the prohibition of crimes and offenses lies within the domain of police power; that the exercise of police power is an exclusive prerogative of the state; that a municipal corporation has no inherent power to enact by-laws or ordinances for punishment of offenses; that it has only such powers as are clearly and expressly conferred upon it by the legislature, or must necessarily be implied in order to carry into effect those expressly granted; that where the legislature, by general law, has exercised its jurisdiction as to the punishment of an offense, there is a presumption of an intention to make its jurisdiction over such subject exclusive; and that in all cases where the grant is uncertain or doubtful the power must be denied.

These general propositions are fully established and illustrated by authority. 18 Am. & Eng. Enc. Law 739; Ravenna v. Pennsylvania Co. 45 Ohio St. 118 [12 N. E. Rep. 445]; Markley v. Mineral City (Vil.), 58 Ohio St. 430, 439 [51 N. E. Rep. 28; 65 Am. St. Rep. 776]; Dillon,

Mun. Corp. (2 ed.) Secs. 301, 302; St. Louis v. Telephone Co. 10 S. W. Rep. 197 [96 Mo. 623; 2 L. R. A. 278; 9 Am. St. Rep 370]; Minturn v. Larue, 64 U. S. (23 How.) 435.

We now come to the only disputed question in the case—Was the city of Wellsville authorized by statute to make the crime of assault and battery an offense against the city? This must be determined from the sections of the statute referred to, which, so far as pertinent, read as follows:

"Section 1692. In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement of the same.

"1. To prevent riots, gambling, noise, and disturbance, indecent and disorderly conduct or assemblages, and to preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants."

"Section 2108. The council of a city or village shall have power to provide for the punishment of persons disturbing the good order and quiet of the corporation, by clamor and noise in the night season, by intoxication, drunkenness, fighting, using obscene or profane language in the streets or other public places, to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct, or by lewd and lascivious behavior."

These sections are found in the same title and relate to the same subject matter—the maintenance of peace and good order in municipal corporations.

It may be assumed at the outset of the discussion that the contention of the city is narrowed down to the construction of a single clause in Sec. 1692 Rev. Stat.

Counsel for the city claim that the authorization of the council "to preserve the peace and good order" of the corporation, is an adequate and clear grant of power for the enactment of this ordinance; and they base their claim solely upon this clause.

This claim of the city is controverted and denied; and the counter-claim is made that Sec. 2108 Rev. Stat. limits the power of the city to pass ordinances to preserve the public peace.

Since a city has no inherent power to make by-laws or ordinances it is incumbent upon the city to demonstrate that the requisite power to

pass this ordinance is expressly given, or of necessity implied in the language used in this clause.

The full import of Sec. 1692 Rev. Stat., as applicable to this contention, would read as follows:

Subject to the exceptions and limitations in other parts of this title, the council of cities and villages may provide by ordinance for the exercise and enforcement of the power "to preserve the peace and good order" of the municipal corporation.

This grant is not unlimited. Ordinances must be reasonable, and they must be appropriate to effect the purposes and objects for which they are authorized by the legislature. It is certain that the purpose of this statute was to permit the council to provide by ordinance for the punishment of disorderly conduct which disturbs or annoys the citizens of the corporation. To give it larger scope would extend the power beyond the necessities of the case and make its limit subject, substantially, to the discretion of the council.

There seems to be some difference of opinion between counsel as to the meaning of the word peace, as used in this statute. It is a word in common use among the people, and its meaning is well understood by them, and their understanding of its meaning is the same as that of lexicographers. The primary meaning according to Webster is, "A state of quiet or tranquility; freedom from disturbance or agitation; calm; repose;" and Bouvier defines it as "The tranquility enjoyed by a political society, internally, by the good order which reigns among its members;" "a state of public order and decorum."

The argument by which it is proposed to sustain this ordinance is, that authority to preserve the peace is equivalent to authority to prevent breaches of the peace; that assault and battery is in all cases a constructive and in many cases is an actual breach of the peace; therefore, authority to preserve the peace is authority to make assault and battery an offense against the city. When this conclusion is reached by this process of reasoning, the section under consideration will, in legal effect, have been amended so as to read as follows: That the council may provide by ordinance for the exercise and enforcement of the power to preserve the peace and good order of the city, and also to prevent breaches of the peace whether actual or constructive.

This argument, if valid, would authorize the council to punish by ordinance all offenders against the criminal laws of the state; for the violation of any criminal law is technically and constructively a breach of the peace. In the opinion of a majority of the court the peace men-

tioned in this section is not of the sort that passeth common understanding, and the power given and intended by the legislature is the power to suppress and punish those minor acts of misconduct that are commonly known and spoken of as public annoyances and disorders.

But it is useless to speculate or dispute as to what construction may reasonably be placed upon this clause of Sec. 1692 Rev. Stat., for the reason that the legislature has decided that question. The power to preserve the peace is given in general terms by Sec. 1692 Rev. Stat., and what the council may do to secure that end is definitely and unmistakably prescribed by Sec. 2108 Rev. Stat.

In express terms the powers granted by Sec. 1692 Rev. Stat. are subject to the limitations in other parts of the same title; and this matter of preserving the peace is as fully controlled by the latter section as though it had been stated in Sec. 1692 Rev. Stat. that the power therein granted to preserve the peace was subject to the provisions of Sec. 2108 Rev. Stat. If attention is directed to the objects sought and purposes declared in the statute as to these two sections, we are brought to the same conclusion.

Section 1692 Rev. Stat., with its forty separate paragraphs and as many separate grants of power is, and by the title at the head of the chapter in which it stands, purports to be, a simple enumeration of the powers granted to municipal corporations, while Sec. 2108 Rev. Stat. is and purports by the head-note of Chap. 7, in which it stands, to be a full exposition of the power of the council as to the public peace. Nor is such specific restriction of power granted in Sec. 1692 Rev. Stat. by general language at all peculiar or exceptional in the matter of preserving the public peace. In many of the forty subdivisions of Sec. 1692 Rev. Stat. unqualified power is given to the council, and other provisions of the statute limit and direct the manner and extent of its exercise. The council, by this section, is authorized to appropriate land, to erect public buildings, to regulate ale, beer, and porter-houses and shops, etc.; and yet, would any one contend that specific legislation, directing how and when such power should be exercised, could be disregarded by the council because in the enumeration of powers the grant is given without qualification or limit? We believe it is a well settled rule of construction of statutes that all provisions relating to a given subject are to be considered and harmonized if possible and such construction adopted as will give effect to every part and provision. If Sec. 1692 Rev. Stat., Par. 1, is held to confer the power to pass any ordinance that may tend to preserve the peace or prevent an actual or technical breach of the peace, then Sec. 2108 Rev. Stat., that purports to mark out in plain terms the path the council

must pursue to preserve the public peace, is without force or meaning. It is evident that the legislature intended to cover the whole field of public peace regulation in the latter section and not some small portions of it; and if that has been done the attempt to extract from Sec. 1692 Rev. Stat. the authority contended for must fail technically as well as actually. If we are right in our position that the claimed authority must be found if at all in Sec. 2108 Rev. Stat. the controversy comes to an end; for this section cannot, by any sort of microscopic analysis, be made to furnish authority to the council to make the crime of assault and battery a municipal offense.

It is a piece of legislation that carries the ear-marks of careful consideration. Its domain is outside of the criminal laws of the state and is a complete supplement of them in the matter of securing the peace and good order of the corporation. It embraces only such local and comparatively trifling misconduct as may cause disturbance and annoyance to citizens upon the streets or other public places; and allows the corporation to punish such misconduct, although it may be incidental to the commission of a greater offense made punishable by the state.

The concluding "otherwise" clause, must, by a familiar rule, be construed as limited to acts of disturbance and annoyance similar in circumstance and character to those precedently enumerated; and it must likewise be so limited because "indecent and disorderly conduct, or by lewd and lascivious behavior," import such public disturbance and annoyance.

By insisting that this case should be governed and decided by the provisions of Sec. 2108 Rev. Stat. we do not concede that the disputed power is conferred by Sec. 1692 Rev. Stat.; but on the contrary, we maintain that if Sec. 2108 Rev. Stat. were repealed or annulled by judicial construction or otherwise, the city of Wellsville would have no power to pass and enforce this ordinance for the following reasons:

1. Where an indefinite grant of power is given, such as "to provide for the general welfare," "to make by-laws for the good government of the place," etc., authority is not conferred upon the corporation, "to make an ordinance punishing an act (for example, an assault and battery) which is made punishable as a criminal offense by the laws of the state." 2 Dillon, Mun. Corp. Sec. 302.

2. In some of our sister states the right of the legislature to authorize municipal corporations to put on their ordinance books the criminal laws enacted by the state, and thereby cause certain offenders to be twice punished for the same criminal act is denied. Savannah v. Hussey, 21 Ga. 80.

In this state, it seems, the legislature may in its discretion allow municipalities to duplicate all misdemeanors that are not required to be prosecuted by indictment.

Whatever disagreement may exist as to the propriety or legality of this duplication of punishment, it cannot be denied that its necessity is doubtful and that in practice it may be made vexatious and oppressive.

Certainly, the fact that assault and battery is punished by the state precludes the city from claiming the right to enact this ordinance on the ground of necessity. We venture the opinion that whenever a claim is made in behalf of a corporation for the exercise of superfluous and unnecessary power it should be supported by a legislative grant so explicit in its terms as to leave no reasonable doubt or question.

3. The argument that to preserve the peace is to prevent breaches of the peace, and that assault and battery is always in law, if not in fact, a breach of the peace, carried to its legitimate conclusion would give a municipal corporation the power to copy and pass into ordinances the whole body of state misdemeanors. We are not called upon to discuss other provisions of Sec. 1692 Rev. Stat., in which power is given to prevent riots and gambling, etc., and which can have no bearing upon the question under discussion.

If the legislature had granted the power to prevent assaults and batteries in Sec. 1692 Rev. Stat., and had not elsewhere in the statute limited the exercise of the power thus conferred, then a different question would be presented, and one analagous, perhaps to the grant of power to prevent riots, etc.

But power to prevent assaults and batteries is not contained in the grant to prevent riots, and if any inference is to be drawn from the mention of riots and the omission of assaults and batteries in this section, it would be, that power was given to punish the former and not given to punish the latter.

In this connection the inquiry is suggested why separate mention should be made of riots in this section. They are always actual as well as constructive breaches of the peace. Evidently the legislature did not have in mind the logic of the argument advanced on behalf of the city, or did not subscribe to its soundness.

After a somewhat thorough examination of the question the majority of the court are well persuaded that the ordinance ought to be held to be void, and the judgment of the court of common pleas is therefore affirmed.

LAUBIE, J., dissenting.

A strike of the workmen of the Wellsville Plate & Sheet Iron Co.'s

plant was in progress, which the prosecuting witnesses in these cases, who were workmen in the plant, would not join, and on the occasion in question were, for that reason, assaulted and beaten by a body of the strikers, of whom the defendants were a part, on one of the public streets of the city—a small riot.

The defendant in each case was arrested, convicted and fined for violation of the first section of an ordinance entitled, "An Ordinance to Prohibit and Punish Certain Offenses therein named, and for the more Effectual Preservation of Peace and Good Order in the city of Wellsville, Ohio."

The penalty prescribed was a fine only.

If acts of sufficient gravity to constitute assault and battery can be said to be a violation of good order or a breach of the peace, the ordinance in question must be upheld, as in such cases it is entirely a matter of discretion in the council whether to enact such ordinance or not. The question of the *necessity* for such an ordinance is therefore not presented. The question here is whether the ordinance is embraced within the scope of the subject of the general power given in the statute, and not whether the authority to enact such ordinance is implied as necessary to carry into effect some special named power.

That the defendants had each been guilty of an actual, and not a so-called constructive, assault and battery, and had thereby committed a breach of the peace, could not be, and was not disputed.

Under the general power conferred, the act prohibited under the name of assault and battery, must be, and shown to be, of such disorderly character as to amount to a breach of the peace; and as the acts in question were of that character, the validity of the ordinance cannot be questioned, and the right to punish such acts denied and taken away because there may be other acts which are constructively brought within the definition of assault and battery which may not be of such disorderly character as to amount to a breach of the peace.

The question here is not to be controlled by the rules applied in determining the constitutionality of a statute.

Here the only question is, was the act called assault and battery of such disorderly character as to constitute a breach of the peace. If it was not, no offense was committed against the municipality—the ordinance was not violated. The ordinance has application only to acts violative of the peace and good order of the city, and is, therefore, valid as against any act of assault and battery of such character as to cause such violation.

But any assault and battery is a disorderly act, a breach of the peace, whether it be called a constructive, or actual assault and battery,

and therefore comes within the scope of the subjects named in the statute in question, and is covered by the ordinance.

In the absence of a given definition of a constructive assault and battery, I assume is meant such as are created by the use of violent language, and the laying on of hands in a menacing manner, without any actual beating of the person.

What is a breach of the peace? In 1 Bouvier, Law Dic. (Rawle ed.) 262, it is defined to be "A violation of public order;" an "act of public indecorum." Lexicographers define indecorum as "an impropriety of behavior which violates the established rules of civility, especially in public."

I am therefore at a loss to see why every assault and battery is not a violation of good order, an act of public indecorum, and therefore a breach of the peace.

It has even been held that the use of violent language on one's own premises toward a person lawfully there is also a breach of the peace. 1 Bouvier, Law Dic. *supra;* 50 Mo. App. 262. Indeed, the wording of the statute in question is broad enough to include all acts that tend to disturb good order, or that amount to disorderly conduct, and consequently must include any act of assault and battery.

This, of itself, should settle the question in favor of the validity of this ordinance.

But this conclusion is rejected on the ground that, if a constructive assault and battery is to be held to be a breach of the peace, it would authorize the council to prescribe and punish *all* acts made criminal by the laws of the state, as the violation of any criminal statute is constructively a breach of the peace.

What has that to do with the question here?

If it has any bearing upon the question in this case, and the legislature *could* delegate such authority, how could the courts interfere to annul it?

But the court (majority) has itself amply refuted the proposition in saying that in this state the legislature may, in its discretion, allow municipalities to duplicate all misdemeanors that are not required to be prosecuted by indictment; having reference, perhaps, to Sec. 10, Art. 1 of the constitution, which provides that "Except * * * in cases of petit larceny and other inferior offenses, no person shall be held to answer for a capital or otherwise infamous crime, unless on presentment or indictment of a grand jury;" and to the case of Dillingham v. State, 5 Ohio St. 280, 282, where it is held that "this (excepted) class was intended to embrace all offenses for which a punishment less than imprisonment in the

penitentiary is provided." So that there is a constitutional inhibition against the proposition, even if the violations of municipal ordinances are to be regarded as crimes or criminal offenses, which they are not.

It may be true, that the words granting such general powers, as used in said Subdivision 1 of Sec. 1692 Rev. Stat. in and of themselves, may be broad and comprehensive enough to include, as claimed, murder and robbery; but it is manifest from the context, and the provisions of many other sections of the same title, that the legislature intended to and has legitimately limited the authority in such matters in municipalities strictly within the domain of police power; and the right to prescribe and punish capital crimes, or any other felony, does not rest upon, nor is it legitimately included within, the domain of police power.

Section 1863 Rev. Stat. provides that the council, in addition to fines and penalties, may provide for the penalty of imprisonment not exceeding thirty days, for the violation of an ordinance of the municipality.

If the violations of municipal ordinances are to be considered crimes or offenses the same as violations of state laws, how is it possible to conceive of an intention to grant final jurisdiction in murder and robbery, where the power to punish is restricted to a small fine and thirty days imprisonment? That no such intention existed is also manifest from a consideration of Sec. 1816 to 1823 Rev. Stat. of the same title.

The proper construction of said Subdivision 1 of Sec. 1692 Rev. Stat. leads to the same result.

By the established rule of construction where a general power in a statute is immediately preceded by specifically named powers, such general power is restricted to those of a smiliar nature to the ones specifically named; and in this instance the general power granted to provide by ordinance against acts which disturb the "peace and good order" of the municipality must be restricted to those which are kindred to and similar in their nature to those specifically named, as riots and gambling, and those legitimately included within the prohibition against "noise and disturbance, indecent and disorderly conduct or assemblages," which are all only of the grade of misdemeanors.

And the same thing is to be said of the construction to be placed on the concluding general power specified in Sec. 2108 Rev. Stat. of said Title 12.

The rule that statutes conferring powers upon municipal corporations must be strictly construed, is not applied to cases like this.

Where the powers granted are general instead of specific, and relate to matters involving the peace, good order and morals of such com-

munities, a liberal construction is placed upon them, and technicalities are
not resorted to in order to defeat them.   In such cases courts declare the
ordinances invalid only when they are constrained to so hold by the strict
letter of the law; as was said by Judge Scott in Canton v. Nist, 9 Ohio
St. 439, 442:

"We are constrained so to hold, however sensible we may be of the
duty to sustain municipal corporations  in the legitimate exercise of the
powers conferred on them  for the preservation of order, and improve-
ment of morals, within their jurisdiction."

In such cases, the ordinance to be invalid, must either be entirely
outside of the scope of the subject and purpose of such general power, or
be unreasonable in itself, or in conflict with the laws and policy of the
state; neither of which objections can be successfully raised against the
ordinance in question.

The claim that the power to prohibit and punish the act of assault
and battery, not having been expressly conferred, cannot be implied
from the general power given, as assault and battery is a statutory offense,
and that if the legislature intended to include such statutory offense it
would have said so expressly, as it did in respect to riots, in my opinion
is untenable.   This claim seems to me not only to run counter to both
principle and authority, but to be opposed to the plain letter of the statute.
It is manifest from the other subdivisions of said Sec. 1692 Rev. Stat., as
well as from the provisions of said Sec. 2108 Rev. Stat. and from the
general provisions of said Title 12, that the legislature intended to and
did confer upon municipalities the power to punish all immoral and dis-
orderly acts, unless such acts were permitted, or recognized as lawful, by
the laws of the state.

But the act prohibited by the ordinance in question, was not thereby
made a crime, a criminal act or offense, precisely of the same kind and
grade as that of assault and battery under the state laws; and to hold
such ordinance valid would not legalize the punishment of an individual
twice for the same crime, and such duplication cannot be presumed to have
been within the legislative intent under such general power.

The Supreme Court, in Koch v. State, 53 Ohio St. 433 [41 N. E.
Rep. 689], followed what it said was "the general course of decisions,"
and held that a "former conviction before a mayor for the violation of an
ordinance is not a bar to the prosecution of an information charging the
same act as a violation of a statute;" referring to Bloomfield v. Trimble,
6 N. W. Rep. 586 [54 Iowa 399]; Minnesota v. Lee, 13 N. W. Rep. 913

[29 Minn. 445]; Robbins v. People, 95 Ill. 175, and Cooley, Const. Lim. 239.

But it was not held in Koch v. State, *supra,* and it is a mistake to assume, that an act done in violation of an ordinance is a crime, a criminal act or offense as at common law, or a public offense under the constitution or laws of the state. Indeed, the court must have held precisely the reverse, as the reverse was what the courts held in the cases upon which our Supreme Court based its decision. Acts violative of municipal by-laws or ordinances are ordinarily loosely spoken of as offenses, but they are not crimes or criminal acts or offenses within the legal meaning of these terms, at least if imprisonment is no part of the penalty, although the same acts are made crimes under state laws, but are merely *quasi* criminal. They are not properly crimes or offenses against the public, but violations of mere local police regulations, for the violation of which a fine may be imposed and collected by action in the name of the municipality, and consequently a conviction under the ordinance is no bar to a conviction under the state law. They are not identically the same crime or offense; and to be a bar, the former conviction must have been for the same identical crime or offense, as well as for the same act.

A prosecution under such an ordinance is not a criminal prosecution, but an action civil in character to recover a fine for disobedience of a police regulation purely local in its character.

The state punishes the offender for the unlawful act of violence to the person of another, and as an offense against the dignity of the state, and the punishment largely is measured by the extent of the injury to the person of the party assaulted; while the municipality punishes, and is authorized to punish, solely for the violation of good order and peace of the municipality, and the punishment is measured by the extent of the disturbance, and not at all by the extent of the injury to the person assaulted; so that the offenses, if both acts are such, are entirely distinct, and not the same, although arising out of the same act.

It was upon these grounds that the court in Koch v. State, *supra,* held, as heretofore stated, because it simply declared that in such cases the conviction under the ordinance was no bar, under "the general course of decisions" as established by the authorities cited. The court therefore adopted the doctrine laid down and declared in those authorities; and a reference to them will show, that they held there could be no bar in such cases upon the grounds I have stated—that such ordinances are mere local police regulations, the violation of which is not a criminal offense, but at most only *quasi* criminal.

Wellsville (City) v. O'Connor.

In one of these authorities, Minnesota v. Lee, *supra,* which was a case of keeping a house of ill-fame, the whole question was gone over thoroughly and well, and the authorities referred to, and it was held that there could be no bar for the reasons I have stated, and that therefore even the constitutional right of trial by jury was not invaded by a summary trial and conviction by the police court.

In a subsequent case in that state, Mankato v. Arnold, 30 N. W. Rep. 305 [36 Minn. 62, 64], the question was again considered, and it was again held that "offenses against ordinances * * * for the preservation of the peace, good order * * * of the community, are not generally construed to be criminal cases, in the proper sense of the term 'criminal,' and prosecutions therefor are not 'criminal prosecutions' within the meaning of the constitution, which refers to prosecutions for offenses essentially criminal under the general laws of the state."

In Inwood v. State, 42 Ohio St. 186, 189, substantially the same doctrine is announced, and it was held that municipal ordinances against petty offenses, where imprisonment is not a part of the punishment, are mere police regulations, and prosecutions thereunder are only *quasi* criminal.

In Markle v. Akron, 14 Ohio 586, 587, Markle was convicted by the mayor for retailing intoxicating liquors to be drunk where sold under an ordinance prohibiting the same. Judge Wood, in disposing of the case said, that "debt" was the only appropriate remedy in such cases, and that "debt, is, in fact, the only form of action recognized by the principle of the common law for the recovery of fines, penalties and forfeitures."

In State v. Rouch, 47 Ohio St. 478, 480 [25 N. E. Rep. 59], this question was directly passed upon, and in announcing the holding Judge Spear said:

"It is true that, in two instances, Larney v. Cleveland, 34 Ohio St. 599, and Shelby (Vil.) v. Boenau, 40 Ohio St. 253, this court has, inadvertently as we think, spoken of such offenses as violations of criminal law. But they are not, strictly speaking, crimes, nor are the proceedings, criminal proceedings, they are *quasi* criminal only. The offender does not offend against the dignity of the state; his offense is only against the municipal corporation whose ordinance he has violated."

After referring to the holding in Markle v. Akron, *supra,* he continues:

"That this has been the understanding of our law-makers, the general current of our legislation attests. The legal machinery for the trial and punishment of violations of ordinances has been provided in the municipal, and not in the criminal, code. * * * Offenses against the

state are divided into felonies and misdemeanors—the former being such as are punishable by death or imprisonment in the penitentiary, and all others, misdemeanors. But to be either, the offense must be against the state. A violation of an ordinance not being an offense against the state, does not come within either class."

And I may add, that in Sec. 1864 Rev. Stat. the legislature has provided that fines for the violation of ordinances may be recovered by civil action in the name of the municipality before any justice of the peace or other competent court, and directs what shall be sufficient to allege against the offender.

Not being a criminal offense, there can be no duplicate punishment, and this argument against the validity of the ordinance falls to the ground.

But however this may be, the authority to pass and enforce this ordinance is conferred by the general powers vested in municipalities by said Subdivision 1 of said Section 1692 Rev. Stat.; and the fact that assault and battery was and is an offense under state laws in no manner affects the question.

Under a general power relative to a particular subject, when not otherwise restricted, municipalities may by ordinance prescribe punishment for all acts which, in any manner, relate to, or affect that subject. For instance, under the power granted to preserve the peace and good order, it is universally held that they may provide against and punish any act amounting to a misdemeanor under state laws, which will in any manner disturb the peace and good order of the community; and this without declaring, or alleging, that it was contrary to the peace and good order of the municipality, it being sufficient, if the act alleged, in itself, would naturally disturb peace and good order. So that the ordinance in question, prescribing punishment for assaulting and beating another, was authorized under the general power to preserve the peace and good order of the city, as the natural result of such an act was to break the peace and good order of the city, which it must be proved to have done in order to convict.

This subject is treated of largely in Dillon, Mun. Corp. Secs. 326-341, 'original numbers, and cases are cited which seem to have far less connection with the subject of the general power than the case at bar. For instance, in Sec. 333 is cited approvingly the case of State v. Merrill, 37 Me. 329, where it was held that a city, under a power granted to pass ordinances for the good order of the city, might impose a penalty for mutilating or destroying any ornamental tree in any of the streets of

such city; and this, too, although the state law made the malicious and wanton destruction of trees grown for ornament or use a crime.

This question is also fully discussed in one of the cases relied upon by our Supreme Court in Koch v. State, *supra,* viz., Bloomfield v. Trimble, 6 N. W. Rep. 586, 587 [54 Iowa 399], and the principle, as I have declared it, fully upheld. In that case Trimble was arrested, tried before the mayor and found guilty of the violation of an ordinance which provided that "if any person shall be found in a state of intoxication, he shall be deemed guilty of a misdemeanor."

The act in question was also made an offense against the state by statute. Section 456 of the Iowa code is almost identical in language with said Subdivision 1 of Sec. 1692 Rev. Stat.; and Sec. 482 authorized municipalities to provide by ordinances, not inconsistent with the laws of the state, for the "order, comfort and convenience of the inhabitants thereof." In upholding this ordinance the court said:

"It is true the statute does not specifically provide that a municipal corporation may punish persons for intoxication or drunkenness. But there are many subjects of municipal control which are not expressed and particularly named in the sections of the code conferring powers upon cities and towns. * * * We entertain no doubt that under these provisions a town or city may, by ordinance, punish for drunkenness. * * * To hold that the council, when it enacted this ordinance, exceeded its powers, and was mistaken as to the effect of drunkenness in the incorporation, and that it does not affect the public peace and order, and the comfort and convenience of the inhabitants, would, it seems to us, be contrary to the common experience of mankind."

In Mobile (Mayor) v. Allaire, 14 Ala. 400, Allaire was arrested, tried before the mayor, convicted and fined for an assault and battery committed within the limits of the city in violation of an ordinance imposing a fine "for an assault and battery within the limits of the city;" and the same act was an offense under the state laws. The power to pass such ordinance was based solely upon the words of the statute granting the power to pass all such resolutions, by-laws and ordinances, as the mayor and aldermen "may deem requisite and necessary for the good government of said city, not contravening the laws of the state."

The court, in an elaborate opinion, upheld the validity of the ordinance, and declared:

"The prompt suppression of riots, affrays, assaults and battery, and other kindred offenses, and the punishment of the offenders, is certainly requisite for the good government of the city." A similar case, with

similar holding in Williamson v. Commonwealth, 43 Ky. (4 Mon. B.) 146.

The general doctrine on the subject under consideration has been fully recognized and enforced in this state in numerous decisions.

In Cincinnati v. Rice, 15 Ohio 225, the defendant was fined by the mayor for keeping open a store on Sunday and selling goods contrary to the ordinance forbidding such acts "or common labor" on the first day of the week. The defendant was a Jew, and was within the exemption provided in the ordinance in favor of those who religiously observed the seventh day of the week as the Sabbath, but the mayor overruled his defense in that regard. The ordinance was authorized solely under a general power similar to the power herein, and was almost precisely in the same words as the statute of the state against such practices; and yet the courts upheld the ordinance, and reversed the conviction solely on the ground that the defendant was within the exemption. In the Supreme Court, in the concluding paragraph of his opinion, Judge Hitchcock says:

"Besides, by giving the ordinance this construction which seems to me to be the proper one, that ordinance is rendered perfectly unobjectionable, as there can be no pretense that it is contrary to a statute law of the state."

In Canton v. Nist, *supra,* the Supreme Court declared a similar ordinance void, not upon the ground that the general and indefinite power under which the ordinance was adopted did not authorize it, as there was a statute making the same acts offenses against the state, but because the ordinance was inconsistent with such statute law in that it did not exempt those who conscientiously observe the seventh day of the week as the Sabbath. The significant remark of Judge Scott, in disposing of the case, I have already quoted.

In Piqua v. Zimmerlin, 35 Ohio St. 507, the question was whether the power given by statute to municipalities, in general language, to regulate ale, beer and porter-houses and shops, authorized an ordinance prohibiting the keeping open of any such house or shop on the Sabbath, where ale, beer, or porter was habitually sold or furnished to be drunk, and it was held that power to pass such ordinance was thus conferred "notwithstanding the statutes of the state made it unlawful for any tavern keeper, or other person, to sell or barter on Sunday, any spirituous liquors," and that it was in "complete accordance with the statutes, and with the object sought to be accomplished."

In Koch v. State, *supra,* substantially the same result was arrived at. While the facts do not appear in the report of the case as published, the record discloses that the conviction before the mayor was for keeping a

saloon open on Sunday, and the Supreme Court based its holding, without explanation, or discrimination, upon the reasoning and result in the case of Bloomfield v. Trimble, *supra,* and others, as heretofore shown.

See also White v. Kent, 11 Ohio St. 550, and Bergman v. Cleveland, 39 O. S. 651.

I know of no case in the reports of our Supreme Court where an ordinance was held void because the act or offense provided against was a misdemeanor under state laws.

It is only where ordinances have been found to be inconsistent with the state laws that they have been held void—never because they were consistent with, or duplicates, of such laws.

As to the holding that if such power to punish assault and battery is conferred by the provisions of said Subdivision 1 of Sec. 1692 Rev. Stat., it is taken away by the provisions of Sec. 2108 Rev. Stat., which the majority hold is a limitation upon the powers granted in said Subdivision 1, of Sec. 1692, I am also compelled to dissent from.

The part of Sec. 1692 Rev. Stat., referred to, preceding said Subdivision 1, reads:

"1692. In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement of the same."

I am at a loss to see how anything in Sec. 2108 Rev. Stat. puts an exception to, or limitation on, the power granted in said Subdivision 1 of Sec. 1692 Rev. Stat. to prevent disorderly conduct, and the violation of peace and good order in the municipality. Certainly, no limitation is expressed. It seems to be one of the specific grants of powers to which those in Sec. 1692 Rev. Stat. are declared to be in addition.

If Sec. 2108 Rev. Stat. was intended to limit the powers conferred by Sec. 1692 Rev. Stat., how is it as to riots and gambling? Instead of limiting the power as to them, it would simply wipe out the power altogether. An exception or limitation to a power is a modification of it merely, restricting its exercise in some manner, or to some extent, as distinguished from its entire destruction or elimination; yet here, if no act of disorderly conduct or breach of the peace can be prohibited by ordinance save those specifically named in said Sec. 2108 Rev. Stat., it would entirely eliminate the power to quell riots, the worst kind of disorderly conduct and breach of the peace, and gambling, and compel the assumption, that after expressly giving the power in the one section, the legislature

deliberately proceeded in the next to take it away. As I have heretofore shown, other sections of said Title 12 do put a limitation upon the general power granted in said Subdivision 1 of Sec. 1692 Rev. Stat. in that the act ordained against cannot be of a higher grade than a common law misdemeanor.

But the powers granted in Sec. 1692 Rev. Stat., as we have seen, are declared to be "In addition to the powers specifically granted in this title," and seem to be more of an addition to those granted in Sec. 2108 Rev. Stat., then said Sec. 2108 Rev. Stat. is a limitation as to the other, especially when it is considered that in Sec. 2108 Rev. Stat., according to its chapter heading, the power delegated relates solely to "Vagrants and Dissolute Persons," while the power delegated in Sec. 1692 Rev. Stat. is general, and relates to all classes of persons.

The legislature having, in Sec. 2108 Rev. Stat., specfically provided for the preservation of the public peace as against the acts of vagrants and dissolute persons in certain particulars, gave, in addition thereto, in Sec. 1692 Rev. Stat., a general power as to all acts of all persons involving the peace and good order, or affecting the safety of the property of the municipality and its inhabitants; and specifically as to riots and gambling (although they would be embraced under the general power named), with authority to enforce the same by ordinance, and we do not have to look to said Sec. 2108, therefore, or to any other section for *that* authority. What the council may do to secure the peace and good order of the municipality is as definitely and unmistakably prescribed in Sec. 1692 Rev. Stat., as it is in 2108 Rev. Stat. Each section provides that the council may enforce the powers granted by ordinance.

Indeed, as to assault and battery, Sec. 2108 Rev. Stat. confers the power to provide against it, as fully as does Subdivision 1 of Sec. 1692 Rev. Stat.

That section gives the power to provide for the punishment of persons disturbing the good order and quiet of the corporation, by "intoxication, drunkenness, fighting, * * * or otherwise violating the public peace by indecent and disorderly conduct."

By the use of the words "or *otherwise* violating the public peace," "intoxication, drunkenness and fighting," are declared to be acts of disorderly conduct violative of the public peace; as in fact they are; and if they are, certainly assault and battery is. It must be regarded as an act of disorderly conduct equally with intoxication, drunkenness or fighting.

It seems to me to be impossible to maintain that assault and battery is not an act of disorderly conduct. If assault and battery is a disorderly

act of such character as violates the public peace—a kindred act to fighting—then why is it not included in the general power thus conferred by said Sec. 2108? It seems to me that it is, and that either of the sections referred to confers the power to punish acts known as assault and battery.

---

## LIENS—JUDGMENT.

[Cuyahoga (8th) Circuit Court, February 23, 1903.]

Hale, Marvin and Winch, JJ.

ALPHONSE J. CHARBONNEAU V. JACOB ROBERTS ET AL.

FAILURE TO ISSUE EXECUTION WITHIN ONE YEAR DEFEATS PRIORITY OF SENIOR JUDGMENT LIEN.

    The priority of the lien of a senior judgment by confession upon the lands of the judgment debtor, over the lien of a junior judgment acquired under a foreign execution and levy, is lost by failure of the owner of the senior judgment to issue execution on his judgment and levy thereon within one year from its rendition.

ERROR to court of common pleas.

W, C. Ong, for plaintiff in error.

Brewer, Cook & McGowan; Riley & McQuigg and Frank Coleman, for defendants in error.

WINCH, J.

July 2, 1901, Alphonse J. Charbonneau took judgment by confession against one Joseph Roberts in the common pleas court of Cuyahoga county, Ohio. The judgment debtor owned lands in said county, but no execution and levy were ever issued on this judgment.

December 2, 1901, Emily Roberts recovered judgment against said Joseph Roberts by the consideration of the common pleas court of Lorain county. Execution thereon was issued to the sheriff of Cuyahoga county, Ohio, and by him levied on the lands of the judgment debtor in controversy on July 14, 1902. August 15, 1902, being more than one year after the rendition of the judgment in favor of Charbonneau, Emily Roberts brought suit in the common pleas court of Cuyahoga county to subject said lands to the payment of her judgment, making Charbonneau party defendant to said suit.

Section 5375 Rev. Stat. provides that a judgment by confession shall be a lien upon the lands of the judgment debtor within the county where the judgment is entered, from the day of its rendition, and that all other lands shall be bound from the time they are seized in execution.

From this it appears that the judgment of Charbonneau became a lien on these lands on July 2, 1901, and the judgment of Emily Roberts